## LEGISLATIVE DESIGNATION OF THE TOLEDO UNIVERSITY.

[Circuit Court of Lucas County.]

JAMES M. WADDICK, AS A TAX-PAYER, ETC., V. JOHN B. MERRILL ET AL.

Decided, May 28, 1904.

*Schools—Universities and Schools for Higher Education—Loose Use of the Word "University"—Manifest Intention of the Legislature Rather than Technical Meaning of the Word Should be Adopted— Application of the New School Code—Injunction—Mandamus— Section 217 of the New Code and 4105, Revised Statutes.*

1. Where it is apparent that the Legislature has enacted laws with reference to a particular city and a particular institution within that city denominated a "university," these laws will be construed as applying to the institution manifestly referred to, notwithstanding it is not technically speaking a university, but is a school of a lower grade.

2. It is not incumbent upon a court, in the exercise of sound discretion, to assume the risk of demoralizing schools near the end of the school year by decreeing that there shall be an immediate change of management in accordance with a law which has been enacted since the suit was filed, and which, if applicable, contains no imperative requirement of such immediate change.

PARKER, J.; HULL, J., and HAYNES, J., concur.

This action is in this court by way of appeal. It is in its nature and upon its face an action of injunction to restrain the directors of the so-called Toledo University from exercising certain franchises, from holding and controlling certain property, and from expending for the purposes of the university funds raised by taxation, and is also to require the board of education of the city of Toledo to do what it is charged the directors of the so-called university are doing in that behalf. It is charged, in short, that the statute providing for this directory which is appointed by the mayor of Toledo is invalid, and also that it does not apply to the city of Toledo, and is therefore ineffective; that the appointment made under it is nugatory, because, as it is said, it applies only to cities where there is in fact a university, and that the city of Toledo has not, in fact, a university—that the so-called Toledo University is not a uni-

versity, within the purview of the act. It is also charged in the petition that the act under which the levy is made to provide for funds to be raised by taxation for the support of this institution is invalid on various grounds, especially on the ground that the legislation is special—that it provides for an unauthorized classification.

There are answers filed on behalf of the various defendants, but the issues of fact made are very narrow, and perhaps not very important in certain aspects of the case, unless in one particular. There is an issue made as to the kind and grade of studies taught by the Toledo University and by the Toledo High School, and we have heard some evidence on that issue.

The petition was filed on July 6, 1903. It appears that prior to the enactment of the statute providing for this board of directors which is now in control, to-wit, Section 217 of the new code, the property and the management of the so-called university was under the control of the board of education of the city of Toledo school district, and that by virtue of an act so providing theretofore in force. It is charged in the petition that this pretended board of directors of the "university" as it is therein designated, "has demanded that the board of education turn over to it all of said property and funds, and that said board of education shall hereafter cease to maintain instruction in said manual training work, leaving such instruction to be provided by such pretended board of directors," and that unless restrained from so doing the board of education will accordingly turn over the property and affairs to the board of directors of the university. It appears by a supplemental petition filed in the case, and by the records and evidence in the case, that no restraining order was issued, and that subsequently the property was turned over to the board of directors of the university, and the university took charge of it, and has since been in control of the school or the department of education which is designated as "the Toledo University." It is also stated in the petition that a levy of .3 of a mill on the dollar of valuation has been made on the taxable property of the city for the purposes of the Toledo University; that this was done on June 15, 1903; and that the board of directors of the university has requested the defendant, William M.

Godfrey, as county auditor, to place the same upon the tax duplicate of the county, the funds to be realized from such levy to be used by said pretended board of directors. With respect to that it appears that no restraining order was issued; that this levy was subsequently made; that the December half of this levy has been collected, and the funds turned over to the board of directors of the university. The June half is upon the tax duplicate, and is about due for collection. So that the aspect of affairs has changed somewhat—we may say, in our judgment, has changed materially, as the case presents itself to the court for disposition, since the action was commenced.

As to the constitutional questions involved. In the case of *State, ex rel Attorney-General,* v. *City of Toledo,* found in 3 C. C.—N. S., 468, these constitutional questions and various other questions pertaining to this institution, were very fully considered by this court, as will be seen by reading the opinion by Judge Haynes in that case. A great many of the questions considered in that case are not involved here, but we think that these constitutional questions were necessarily involved there. It is urged that the particular question of the taxing power which is conferred, or undertaken to be conferred, upon the city or upon the board of education, under the statute in question, was not passed upon by the court there. We think however, that the whole act was necessarily involved, in all its provisions. Even if that were not so, in the situation of this case as I have described it, the tax having gone upon the duplicate, being due for collection and partly collected, the treasurer not being made a party defendant, nor sought to be restrained from making any collection, the case seems to have shifted into one where we are asked to require one board to take control of the property and affairs of the Toledo University, including the amount to be collected as taxes, and to restrain the other board from exercising such control, and that its aspect of a proceeding to restrain the levy of taxes has passed away. We therefore do not believe that it is necessary for us to go any further into a consideration of the constitutional questions involved. They are sufficiently discussed and are necessarily disposed of in the case of *State, ex rel,* v. *Toledo, supra.*

It will be observed that what remains of the case, and the disposition to be made of it, depends in large measure upon the construction to be put upon this section of the statute—217— providing for the appointment of this board of directors, and more particularly upon the construction of the word "university" found in that statute. It reads in part:

"In any municipal corporation having a university supported in whole or in part by municipal taxation all the authority, powers and control vested in or belonging to said corporation with respect to the management of the estate, property and funds given, transferred, covenanted or pledged to said corporation in trust or otherwise for such university, as well as the government, conduct and control of such university, shall be vested in and exercised by a board of directors consisting of nine electors of said municipal corporation, who shall be appointed by the mayor of such municipal corporation."

It then gives their terms of office.

It was in pursuance of that provision that this board was appointed, and it is contended that this act does not apply to this city or to this institution in the city of Toledo, because it is not a university. Upon that subject counsel for plaintiff has furnished us with many definitions of lexicographers, men of education, scholars, and it seems to us plain, that according to these definitions, the institution carried on here is not a university as it is and sometimes has been carried on.

But that does not settle the question. What we are called upon to determine is the sense in which the Legislature used this word "university" in this statute. It is said with very good reason, that ordinarily the Legislature would be presumed to have adopted the correct and technical meaning of words, or at least their general and ordinary meaning; but it seems to us that there has been a somewhat loose use or misuse of this word, from the beginning, by the donor in the deed of trust providing for funds for this institution, by the council of the city in its legislation upon the subject, and by the state Legislature in legislating upon the same subject. It seems to us that it is apparent from the legislation of the state that the word "university" has been used with respect to this very institution,

from the beginning of the legislation upon the subject, or ever since the time the city of Toledo could have come within the purview of the law. It has been suggested that the original statute applicable to the city of Cincinnati, and to that city alone, mentions "university," and that as we understand it, there has never been, or was not in the first instance, at least, a university there, within the true meaning of the term. It was a university in embryo in the first instance. But, however that may be, with respect to the city of Toledo, it is apparent that the legislation has been directly over the control and management of this institution. It is clear that it is the only institution in the city of Toledo that is a university either in fact or in name, either in existence or in embryo. In point on the subject is 94 O. L., 241. This is Section 4105, Revised Statutes, as amended on April 16, 1900, and it is the law that was in force at the time the case of *State, ex rel,* v. *Toledo, supra,* was decided. It prescribes, as does this Section 217 also, that it shall apply to a city where a university is located. Most of the statutes, and this Section 4105 in most instances as it has been amended from time to time, have contained other terms whereby they might be applied to other institutions than universities; "schools" and "institutions of learning" were terms used in addition to the word "university," but in this statute only the word "university" is used. It provides:

"That the provisions of this chapter shall be applicable to cities of the third grade of the first class, except that the rate of taxation to be assessed and levied shall not exceed one-half of one mill upon the taxable property of such cities; and except that the board of directors or trustees shall consist of five members, and shall be filled by appointment from persons of approved learning, discretion and fitness for the office, by the board of education and confirmed by the common council in the city in which such university shall be located."

It was in pursuance of that section that the board in control was acting at the time of the acts that I have mentioned. It was in pursuance of that that it had been formed. Under that it derived whatever authority it may have acquired.

Now, we think that some weight and significance should be attached to the action of the state, as represented by the at-

torney-general in the case of *The State, ex rel Attorney-General, v. Toledo, supra.* Without stopping to recite a great deal that is contained in the petition in that case, I will say that it is therein stated and repeated in various forms, that the city of Toledo came within the purview of the act, and that this was a university. There is no question made about it in that case. It was stated and accepted on all hands as a fact. The idea of making the attack upon the other ground seems to be a new one—something that has originated since this other case was brought here by the state. This, as I say, indicates that the then law officer of the state as well as the Legislature of the state, have treated the institution called a university in the city of Toledo as a university, and that the state has legislated with respect to it. The act to which I have just called attention would apply to the city of Toledo only. Indeed, it was attacked upon that ground in that case as being special. In part of this legislation, in one act, at least, the city of Toledo is specifically mentioned as the city to which the act is to apply.

Our conclusion upon the matter is, therefore, it being, as I say, apparent to us that the Legislature has legislated with respect to the city of Toledo, and this institution called a "university" in the city of Toledo, that the Legislature has used the term "university" in the loose way—perhaps in the improper way—that it has been used by citizens of the city generally, by the donor, by the city Legislature of the city of Toledo, *i. e.,* as applicable to this institution; and that therefore the act applies to the city of Toledo, and the mayor was called upon to act, and proceeded properly and regularly in appointing this board of directors. That substantially disposes of the case.

There is another matter that I shall mention. In this Section 217 of the new code there is a provision that "all acts or parts of acts not inconsistent herewith which govern such universities shall be and remain in full force and effect and Sections 4095, 4096, 4097, 4099, 4100, 4101, 4102, 4103 and 4104 of the Revised Statutes as amended May 12, 1902, shall remain in full force and effect." There is no mention, it will be observed, of Section 4105, which is the section which makes the act applicable to the city of Toledo—the section which authorizes the levy of taxes in the city of Toledo, which pro-

vides the number and character of the trustees, etc., for the
institution in the city of Toledo. That has given rise to some
doubt and uncertainty as to whether that section of the law was
repealed or preserved by the provision that "all acts or parts
of acts not inconsistent herewith which govern such universities
shall be and remain in full force and effect," and the provi-
sion elsewhere found that all acts inconsistent shall be regarded
as repealed. But the chief purpose of the Legislature in the
adoption of the Municipal Code, as is well known, was to
abolish all those classifications that had theretofore been pro-
vided by legislation, and which the Supreme Court had held
to be unconstitutional. It is the evident purpose of this section
to bring all municipal corporations of the state, where there may
be universities existing, within its purview. In so far, then,
as Section 217 provides for the mode or system of government,
who the directors shall be, how they shall be appointed, etc.,
we are of the opinion that it covers the whole subject, and nec-
essarily abrogates so much of Section 4105 as contains the pro-
vision that the matter shall be committed to the control of the
board of education of the city school district. It does not follow,
however, that all of Section 4105 was thereby abrogated. That
section provided for the levy of taxes by the board of educa-
tion, and there is no corresponding provision in the new Munic-
ipal Code. The section is not specifically repealed, and so far as
we can observe, there is no objection to holding, and there is no
reason why we should not hold, that that provision of Section
4105 is still in force, and therefore the levy that is attacked in
this case was regularly made in pursuance of that statute, and
the tax so levied is enforceable.

Our attention is called to the fact that by legislation of the
Legislature just adjourned this whole matter has been changed,
and probably materially changed. We have not been furnished
with a certified copy of the act, or a printed copy, other than
a copy of the bill which was introduced in the Legislature, with
certain printed and written memoranda upon it, and certain ad-
ditions, and certain parts stricken out. We assume that this copy
is correct; but it does not enlighten us as to the time when it
passed or became a law, which is, perhaps, not very important.
Our attention is called to the fact that by the new school code,

schools of different kinds falling below the dignity of colleges and universities are defined, and so are colleges and universities. Under this new act universities are defined as follows, Section 4102, Revised Statutes:

"A university supported in whole or in part by municipal taxation, is hereby defined as an assemblage of colleges united under one organization or management, affording instruction in the arts, sciences and the learned professions, and conferring degrees."

This seems to be according to the general definition laid down by lexicographers and scholars.

The act provides that the taxes to be levied after the adoption of this act "shall only be levied and assessed when the chief work of such university, college or institution, is the maintenance of courses of instruction, in advance of and supplementary to the instruction authorized to be maintained in high schools by boards of education."

It contains an amendment of Section 4105:

"The custody, management and administration of any and all estates or funds, given or transferred in trust to any municipality for the promotion of education, and accepted by the council thereof, and any institution for the promotion of education heretofore or hereafter so founded other than a university as defined by this act shall be committed to, and exercised by, the board of education of the school district including such municipality."

So that it is said that this whole subject is to be re-committed to the board of education. We are not prepared to dispute that. We do not, however, feel called upon to pass upon that question. In view of the present situation we think the court should decide this case upon the law as it stood at the time the action was instituted. It is shown by the testimony of the superintendent of schools that this so-called university and the high school are working together in conjunction and very harmoniously; and it appears that we are about at the close of the school year—that is to say, that the term of the schools will close during the month that we are about entering upon. The only effect that any order we could make now, in pursuance of this recent statute, could have, would be to transfer a part of this fund that

is about to be collected to the hands of the board of education. It does not appear that this would operate in any way to the advantage of the plaintiff who is here complaining or to the tax-payers of the city whom he represents. As I have indicated, the nature of the case has changed somewhat. It has developed now into an action of mandamus, practically. It is said what is desired is a mandatory injunction, which is, in its nature, a mandamus, when directed to particular officers and commanding performance of certain specific official acts or duties. The granting of the relief is largely within the discretion of the court. It is an extraordinary relief; it is a high prerogative writ. The courts are not always called upon to grant such relief, even though there may be a legal right to the thing sought. In the exercise of what we believe to be a sound discretion in this matter, we think that it would be wrong for us at this juncture to take the risk of demoralizing the schools of this city about the time they are to graduate their students who are to graduate this year, about the time they are to close the business of the school year, by decreeing that there shall be a change of management of the affairs of the so-called university; that these university directors shall step down and out, and charge shall be taken by the board of education, and all the funds and property shall be turned over by the former to the latter. Therefore we decline to do it. We leave the matter so the parties may, if they choose, institute new action under the new law. Our attention is called to the fact which is now a matter of common information that we have a right to consider, that there is a possibility, perhaps a probability, of some new features coming into this so-called university, whereby it may come within the purview of the new law, i. e., the statutory definition of a university. For these reasons we think that we should not now undertake to mould the case and determine it under this recent legislation.

We therefore dismiss the petition at the costs of the plaintiff.

*J. Y. Todd,* for plaintiff.

*C. S. Northup,* for defendants.